UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)

| | | |
|---|---|---|
| Robin and Debra Trimble<br>c/o Mills Mills Fiely and Lucas LLC<br>632 Vine St., Suite 305<br>Cincinnati, OH 45202 | : <br> : <br>  <br> : | Case No. 14-CV-2648 |
|  | : | Judge Graham |
| Plaintiffs, |  | Magistrate King |
|  | : |  |
| v. |  |  |
|  | : | **AMENDED COMPLAINT** |
| Wells Fargo Bank, N.A.<br>420 Montgomery St.<br>San Francisco, CA 94104 | : <br>  <br> : | **WITH JURY DEMAND** |
| And | : |  |
| Shapiro, Van Ess, Phillips & Barragate<br>4805 Montgomery Road, Suite 320<br>Cincinnati, OH 45212 | : <br> : <br> : |  |
| And | : |  |
| Provest, LLC<br>4520 Seedling Circle<br>Tampa, FL 33614 |  |  |
|  | : |  |
| Defendants |  |  |

**JURISDICTION AND VENUE**

1. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Supplemental jurisdiction exists for claims brought under Ohio law pursuant to 28 U.S.C. § 1367.

2. Venue in this district is proper because Defendants transact business in this district and the conduct complained of occurred in this district.

**PARTIES**

1

3. Plaintiffs, Robin and Debra Trimble ("Plaintiffs"), are natural persons residing in the City of Mt. Gilead, County of Morrow, State of Ohio. At all times relevant herein, Plaintiffs have resided at this residence. Plaintiffs are "consumers" as defined by the Fair Debt Collection Practices Act as owing and/or allegedly owing a mortgage account to Defendant Wells Fargo Bank, N.A.

4. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is an incorporated business under the laws of the State of California that maintains its principal place of business in California. Wells Fargo is believed to be the servicer of Plaintiffs' loan during all times relevant herein.

5. Defendant Shapiro, Van Ess, Phillips and Barragate, LLP ("Shapiro") is a legal professional association registered with the Ohio Secretary of State that maintains its principal place of business in Cincinnati, Ohio. Shapiro is a "debt collector" as defined by the FDCPA because its business uses the mails with the principal purpose to collect debts that are allegedly owed to mortgage servicers and, as to Plaintiffs, it actually did use the mail with the principal purpose to collect a debt for another.

6. Defendant Provest LLC ("Provest") is a limited liability corporation incorporated under the laws of the State of Delaware that maintains its principal place of business in Tampa, Florida. Upon belief, Provest LLC among other things operates as a process server in various states, including Ohio. Provest is a supplier as defined by the Ohio Consumer Sales Practices Act.

**STATEMENT OF FACTS**

**The Foreclosure Proceedings**

7. On or about January 13th, 2014, the Plaintiffs were served with a foreclosure complaint prepared and filed by Shapiro on behalf of Wells Fargo. Said case was filed in Morrow County Court of Common Pleas, Case No. 2014 CV 0009.

8. Shapiro filed a Notice of Voluntary Dismissal of the Foreclosure case on or about January 17th, 2014 which was purportedly mailed to Plaintiffs.

9. Not having received the Dismissal from either the Clerk or the Shapiro, the Plaintiffs hired Deborah L. Mack, Esq. who caused an Answer, Counterclaim against Wells Fargo and Third Party Complaint against Shapiro to be filed on or about February 14th, 2014.

10. The Court dismissed the Plaintiff's Counterclaims on or about April 22nd, 2014 pursuant to a show cause order in which the Court believed its jurisdiction to the claims was divested by the filing of the Notice of Dismissal on January 17th, 2014.

### Pre-Foreclosure Actions

11. On or about July 22nd, 2003, the Plaintiffs originated a loan with America's Wholesale Lender against their real estate in the original amount of $150,220.00

12. This loan was assigned to Wells Fargo on or about April 27th, 2010.

13. Sometime in 2011, the Plaintiffs began to suffer financial hardship and contacted Wells Fargo for assistance. This contact led to a loan modification in 2011 between the Plaintiffs and Wells Fargo.

14. In mid-2013, the Plaintiffs again, faced with some financial distress caused by on-going medical conditions, contacted Wells Fargo to look into assistance and submitted a Request for Hardship Assistance in May 2013.

15. From September 1st, 2013 through November 1st, 2013, the Plaintiffs entered into a trial loan modification payment plan which required monthly trial payments to be made to Wells Fargo. The Plaintiffs made all required payments.

16. Sometime between November 1st, 2013 and December 18th, 2013, Wells Fargo sent Plaintiffs a permanent loan modification which is attached as Exhibit A. The Plaintiffs signed the agreement on December 18th, 2013 and sent the agreement back to Wells Fargo. Wells Fargo signed the agreement on or about January 9th, 2014.

17. Pursuant to the terms of the modification agreement, the Plaintiffs were to resume payments as of February 1st, 2014 and the loan was brought current through that date by Wells Fargo.

18. On or about January 13th, 2014, Wells Fargo through the assigned Homeowner Preservation Specialist, sent a letter to the Plaintiffs indicating receipt of the executed permanent loan modification. A copy of the letter is attached as Exhibit B.

19. On or about January 13th, 2014, Wells Fargo sent a second letter to the Plaintiffs indicating the loan was in good standing. A copy of the letter is attached as Exhibit C.

20. The Trimbles remain current with their mortgage payments as of the date of the filing of this Complaint. A copy of their November 10th, 2014 statement is attached as Exhibit D.

### Foreclosure Proceedings Initiated

21. As alleged above on January 13th, 2014, Wells Fargo, through Shapiro, filed a Complaint for Foreclosure alleging a mortgage delinquency.

22. On January 13th, 2014, Wells Fargo, through Shapiro, filed a Motion to Appoint Process Server which was granted.

4

23. Upon belief, the Process Server hired by Wells Fargo was an employee or contractor of Provest.

24. On January 15th, 2014 around 10:00p, the process server broke into the home of the Plaintiffs, entering through their closed garage door and pounding upon their interior kitchen door. The pounding at the late hour terrified the Plaintiffs.

25. After a brief pause, the pounding resumed which continued to frighten the Plaintiffs.

26. Plaintiff Robin Trimble, along with his 27 year old son, went to the front door to find an unidentified man on the doorstep.

27. Mr. Trimble opened the door and the process server, an agent of Provest acting at the direction of Wells Fargo, handed him legal documents and mumbled something about "service of process".

28. At no time did the process server identify himself as an employee of Provest. This fact was not discovered until following the filing of the Original Complaint in this Matter as detailed by Plaintiff's Motion for Leave to Amend Complaint.

29. The Trimbles reviewed the documents and were totally baffled, confused, and outraged given the letters they received from Wells Fargo on January 13th, 2014.

30. The next day and until they hired counsel, the Trimbles attempted to contact Wells Fargo and, upon information and belief, Shapiro to try and understand why the Complaint had been filed and the status of the loan modification agreement in the face of the January 13th letters.

**CLAIM I: FAIR DEBT COLLECTION PRACTICES ACT – WELLS FARGO AND SHAPIRO**

31. Plaintiffs allege the preceding paragraphs as if fully rewritten herein.

32. Wells Fargo and Shapiro's actions in attempting to collect false mortgage payment arrearages violate the FDCPA, including but not limited to:

    a. 15 U.S.C. § 1692e and e(2): misrepresenting the character, amount, or legal status of the debt;

    b. 15 U.S.C. § 1692f and f(1): attempting to collect any amount not authorized by agreement or permitted by law.

33. Wells Fargo improperly referred a foreclosure complaint to be filed by Shapiro despite offering a permanent loan modification to the Plaintiffs which was executed by Wells Fargo themselves on January 9th, 2014.

34. Wells Fargo caused a foreclosure complaint to be filed against the Defendants incorrectly seeking to collect a debt that was not owed given the express terms of the permanent loan modification.  Additionally the foreclosure complaint incorrectly stated the amount of arrearages owed given the terms of the loan modification which Wells Fargo had express knowledge of.

35. The actions of Wells Fargo in seeking to collect a debt that was not owed are more akin to the actions of a debt collector as defined under the FDCPA and outside the scope of their regular servicing duties of the Plaintiffs' mortgage loan.

36. Shapiro, on behalf of Wells Fargo, filed a foreclosure complaint against Plaintiffs incorrectly seeking to collect a debt that was not owed given the express terms of the permanent loan modification.

37. Plaintiffs have been harmed by the violations of both Wells Fargo and Shapiro's violations and are entitled from each Defendant to statutory damages, actual damages, including non-

economic damages for mental anguish, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a).

### CLAIM II: BREACH OF CONTRACT – WELLS FARGO

38. Plaintiffs allege the preceding paragraphs as if fully rewritten herein.

39. Plaintiffs and Wells Fargo have a binding contract since Wells Fargo is the owner of Plaintiffs' mortgage loan.

40. In creating the trial payment plan and permanent loan modification, Wells Fargo was creating an extension of their existing mortgage contract with the Plaintiffs. Wells Fargo had a duty to accept all payments and credit them properly.

41. By extending and executing the permanent loan modification between the parties, both Plaintiffs and Wells Fargo understood the mortgage contract as of January 1st, 2014 indicated the loan was no longer in default and the Plaintiffs were expected to make their first modified contractual payment as of February 1st, 2014.

42. Wells Fargo had a duty under the terms of the mortgage and the modification to notify all parties, including Shapiro, of the corrected account arrearage.

43. By allowing and authorizing the foreclosure complaint to be filed, Wells Fargo breached their duties and created a blatant misrepresentation of the terms of the contract. The breach was one of bad faith because Wells Fargo knew the account was current and that the foreclosure complaint would contain legally and factually false information as to the Plaintiff's account.

44. Wells Fargo's breach of contract not only caused the Plaintiffs to suffer actual economic damages to hire Deborah Mack to defend the foreclosure but also additional economic damages now of having to defend against its further actions and also the Plaintiffs have

7

suffered damages for distress, fear of losing their home, fear of not understanding why the permanent loan modification was not being honored, and mental anguish.

45. Plaintiffs are entitled to actual damages and reasonable attorneys' fees and costs.

## **COUNT III: NEGLIGENT SERVICING – WELLS FARGO**

46. The Plaintiffs restate all allegations as if fully contained herein.

47. The National Mortgage Settlement provides a baseline for proper servicing standards in regards to mortgage loans.  A copy of the Consent Judgments in connection to numerous lenders can be located and viewed at www.nationalmortgagesettlement.com.

48. Exhibit A to each of the National Mortgage Settlement Consent Judgments is titled the "Settlement Term Sheet."

49. Section IV of the Settlement Term Sheet provides, in relevant part that:

These requirements are intended to apply to both government-sponsored and proprietary loss mitigation programs and shall apply to subservicers performing loss mitigation services on Servicer's behalf.

B. Dual Track Restricted.

1. If a borrower has not already been referred to foreclosure, Servicer shall not refer an eligible borrower's account to foreclosure while the borrower's complete application for any loan modification program is pending if Servicer received (a) a complete loan modification application no later than day 120 of delinquency, or (b) a substantially complete loan modification application (missing only any required documentation of hardship) no later than day 120 of delinquency and Servicer receives any required hardship documentation no later than day 130 of delinquency. Servicer shall not make a referral to foreclosure of an eligible borrower who so provided an application until:

a. Servicer determines (after the automatic review in paragraph IV.G.1) that the borrower is not eligible for a loan modification, or

b. If borrower does not accept an offered foreclosure prevention alternative within 14 days of the evaluation notice, the earlier of (i) such 14 days, and (ii) borrower's decline of the foreclosure prevention offer.

50. Wells Fargo was a party to the National Mortgage Settlement, but should abide by the standard of care established by and through such as it provides a baseline for proper servicing standards in regards to mortgage loans.

51. The Plaintiffs, upon and in conformance with Wells Fargo's instructions, repeatedly sent in loan modification documents for review by Wells Fargo. These documents led to the Trial Loan Modification and the Permanent Loan Modification Agreement

52. Wells Fargo continued to dual-track the foreclosure despite the express terms of the national mortgage settlement as demonstrated by the filing of the foreclosure complaint. Wells Fargo's actions in wrongfully dual-tracking the Plaintiff's mortgage loan proximately caused the Plaintiffs to suffer actual damages, including, but not limited to, the out-of pocket damages of hiring both prior and current counsel, as well as the non-economic damages in the form of a diminution of credit score, aggravation, humiliation, embarrassment, loss of privacy, a strain on their personal relationships including the Plaintiff's marriage, loss of enjoyment of life, sleepless nights, anxiety and worry.

53. Wells Fargo owed a fiduciary duty under the terms of the Settlement to properly acknowledge the loan modification including the cessation of any possible foreclosure complaint and the pay out of escrow payments to the Morrow County Treasurer timely. Wells Fargo additionally owed a duty to the Plaintiffs not to assess illegal, unauthorized

9

or improper charges and to service the mortgage of the Defendants in a commercially reasonable manner as to not create a false default or a default not based in fact.

54. Wells Fargo's breach of duty proximately caused injury to the Plaintiffs including emotional injuries and economic damages.

55. As a result, the Plaintiffs are entitled to actual damages, non-economic damages including punitive damages, and all other damages allowable under the law.

### **CLAIM IV: INVASION OF PRIVACY – ALL DEFENDANTS**

56. Plaintiffs allege the preceding paragraphs as if fully rewritten herein.

57. The Plaintiffs, like all persons, have a reasonable expectation of privacy in their solitude, seclusion, and/or concerns or affairs, including their financial affairs.

58. The Plaintiffs choose to live in a rural area like Morrow County because they treasure their privacy.

59. Wells Fargo intruded upon the Plaintiffs' reasonable expectation of privacy in their solitude, seclusion, and/or concerns or affairs, by inducing them into making payments pursuant to a temporary and permanent loan modification and yet authorizing (and charging legal fees against Plaintiffs' mortgage account) a foreclosure complaint to be filed without reviewing its own records evidencing the modification and the payments rendered thereunder.

60. Wells Fargo and Shapiro by filing the foreclosure action which caused the appointment of the process server who physically intruded at an unreasonable hour onto Plaintiffs' property intruded upon the Plaintiffs' reasonable expectation of privacy in their solitude, seclusion, and/or concerns or affairs.

61. The intrusion by Wells Fargo, Provest's process server, and Shapiro jointly and severally occurred in a way that would be highly offensive to a reasonable person in the position of the Plaintiffs.

62. The intrusions by the Defendants jointly and severally caused serious damage to the Plaintiffs in the form of mental and physical anguish, embarrassment, loss of privacy, fear over the loss of privacy, and loss of enjoyment of life thereby entitling Plaintiffs to damages, costs and attorneys' fees.

### **CLAIM VI: TRESPASS – PROVEST AND WELLS FARGO**

63. Plaintiffs allege the preceding paragraphs as if fully rewritten herein.

64. As alleged above, a process server under the employ of Provest on behalf of Wells Fargo entered the premises of the Plaintiffs after business hours and into an area through a closed garage door. The process server, knew or should have reason to know, that he could not enter the closed premises of the Plaintiffs. Acting on the direction and instruction of the Defendants, the process server acted outrageously in attempting to serve the legal paperwork.

65. The actions of the process server are outside the scope of the reasonable duties of a process server and the conduct is extreme and outrageous to persons similarly situated to the Plaintiffs.

66. The actions of the process server proximately caused immediate and serious emotional harm and mental anguish. The Plaintiffs were clearly damages by this outrageous conduct and are entitled to receive, from the Defendants jointly and severally non-economic damages in the form of punitive damages, costs, and attorneys' fees.

## COUNT VII: FRAUDULENT MISREPRESENTATION – SHAPIRO AND WELLS FARGO

67. Plaintiffs allege the preceding paragraphs as if fully rewritten herein.

68. Defendants Wells Fargo and Shapiro knowingly and/or recklessly misrepresented to Plaintiffs and the Morrow County Court of Common Pleas that the Plaintiffs were grossly behind in their mortgage payments when in fact the Plaintiffs and Wells Fargo had executed a permanent loan modification and the account was contractually current.

69. Shapiro's dismissal of the foreclosure complaint four days later is further demonstration of the misrepresentations of the account and lack of legal basis to file the foreclosure.

70. Wells Fargo and Shapiro made the representations in the Foreclosure Complaint with the foreseeable knowledge that the Plaintiffs would justifiably rely upon them to their detriment by having to spend money and time to correct these incorrect statements of the account and to hire counsel to defend against the unwarranted foreclosure.

71. The misrepresentations proximately caused Plaintiffs economic damages, the full amount of which will be more fully calculated through discovery, including misapplied payments, late charges that were not owed, and the costs of hiring counsel to defend against the foreclosure and to bring actions to attempt to correct their loan.  In addition, the misrepresentations caused Plaintiffs to suffer non-economic damages for the stress, frustration, and anxiety of having to deal with this. Finally, the actions by these Defendants are a pattern and practice of a scheme to defraud borrowers and force them into foreclosure; therefore, Plaintiffs are entitled to punitive damages.

## TRIAL BY JURY

72. Plaintiffs are entitled to and hereby respectfully request a trial by jury on each and every matter so entitled. US Const. Amend. 7.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, having set forth their claims for relief against Defendants, respectfully pray of this Court as follows:

A. That Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of statutory damages;

B. That Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;

C. That Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages;

D. That Plaintiffs have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorneys;

E. That this Court issue a Declaratory Order Striking the Record of Case No. 2014 CV 0009 in the Morrow County Court of Common Pleas; and

F. That Plaintiffs have such other and further relief as the Court may deem just and proper.

Respectfully submitted,
/s/Brian D. Flick, Esq.
Brian D. Flick, Esq. #0081605
Mills Mills Fiely and Lucas
632 Vine St., Suite 305
Cincinnati, OH 45202
(513) 718-7176
(614) 767-5229 fax
bflick@mmfllaw.com

**Certificate of Service**

I hereby certify that on this 9th day of March, 2015, a copy of Plaintiff's Amended Complaint was served on Defendants Wells Fargo and Shapiro pursuant to Local Rule.  A copy of Plaintiff's Amended Complaint and Exhibits will be served upon Provest pursuant to the Summons submitted concurrently with this Complaint.

/s/Brian D. Flick, Esq.